UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES                              CRIMINAL ACTION

VERSUS                                     NO: 12-190

TORRIE BRUMFIELD                           SECTION: "J"(5)


## ORDER

Before the Court is the Government's Motion to Vacate Plea Agreement and Dismiss Superseding Bill of Information as to Torrie Brumfield **(Rec. Doc. 136)**. The Government filed the motion on June 10, 2013 and requested expedited hearing in light of the June 17, 2013 trial date. The Court set the motion for a hearing in open court on **Tuesday, June 11, 2013 at 2:00 p.m.** After the hearing, the Court took the motion under advisement. Having considered the motion, the memoranda, the record, and the applicable law, the Court finds that the Government's motion should be **GRANTED** for reasons explained more thoroughly below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On May 17, 2012, the Government filed an eleven-count indictment against five defendants, naming Torrie Brumfield

("Brumfield") in five of the eleven counts. Count one alleged that Brumfield conspired with four other defendants to distribute and possess with the intent to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. § 846. Count five alleged that on April 1, 2011, Brumfield knowingly and intentionally possessed with the intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Counts six and seven alleged that on April 6, 2011 and August 3, 2011, respectively, Brumfield knowingly and intentionally distributed and possessed with the intent to distribute 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Finally, count eleven alleged that on or about April 18, 2012, Brumfield, along with three other defendants, knowingly and intentionally distributed and possessed with the intent to distribute twenty-eight grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

Although the case was originally set for jury trial on July 23, 2012 (Rec. Doc. 46), the Court continued the trial four times. (Rec. Docs. 60, 63, 76, 102) After the Court granted the third continuance on December 18, 2012, three of Brumfield's co-defendants, Floyd Hampton ("Hampton"), David Chaney ("Chaney"), and Will Dunn ("Dunn") changed their pleas to guilty. (Rec. Docs. 80, 81, 96) On January 24, 2013, Hampton pleaded guilty to counts

one, two, three, four, and eleven of the original indictment without the benefit of a plea agreement. (Rec. Doc. 80) The same day, Chaney pleaded guilty to counts one, two, three, four, and five of a superseding bill of information pursuant to a plea agreement. (Rec. Docs. 81, 85) On February 7, 2013, Dunn pleaded guilty to counts one, two, three, and four of a superseding bill of information pursuant to a plea agreement with the government. (Rec. Doc. 96) On February 14, 2013, the Court granted a fourth continuance setting the trial of the remaining defendants, Brumfield and Marco Dillon ("Dillon"), on June 17, 2013. (Rec. Doc. 102)

At the pretrial conference on May 30, 2013, Brumfield's attorney informed the Court that his client intended to change his plea, and the Court scheduled Brumfield's rearraignment. (Rec. Doc. 127) On June 5, 2013, approximately twelve days prior to the trial date, Brumfield pleaded guilty, pursuant to a plea agreement with the Government, to a superseding bill of information charging him with one count of conspiracy to distribute more than 28 but less than 280 grams of cocaine base. (Rec. Doc. 129) The superseding bill of information contained a notice of sentencing enhancement, pursuant to 28 U.S.C. § 851, enumerating a single prior state court conviction for possession with intent to distribute cocaine in violation of La. R.S.

3

40:967(a)(1). (Rec. Doc. 129) In the plea agreement, the Government agreed that if the Court accepted Brumfield's guilty plea to the superseding bill of information, it would not charge him with any other violation of the Federal Controlled Substances Act that he may have committed in the Eastern District of Louisiana prior to June 3, 2013. The plea agreement also reflected that although the Government charged Brumfield as a multiple offender pursuant to 21 U.S.C. § 851 on the basis of his prior felony drug conviction, the Government agreed to charge only one of two possible counts under 21 U.S.C. § 851. The plea agreement also reflected that if the Government had charged the second count, Brumfield would have faced a mandatory life sentence if convicted under the original indictment. Brumfield's plea agreement also contained the following paragraph:

> This plea agreement is predicated upon the fact that [Brumfield] agrees to submit to interviews whenever and wherever requested by law enforcement authorities. [Brumfield] understands that he must be completely truthful. [Brumfield] also agrees to appear before any Grand Jury or trial jury and to testify truthfully. [Brumfield] understands that if he is not truthful, this agreement will be null and void and defendant may be prosecuted for perjury or making false statements. The defendant agrees neither to implicate anyone falsely nor to exculpate or protect anyone falsely. The defendant further agrees to immediately advise the Government as to any person defendant believes to be violating the law and defendant agrees to assist the Government with regard to the investigation and prosecution of criminal conduct.

(Plea Agmt., Rec. Doc. 140, p. 4)

4

At his rearraignment, Brumfield signed the plea agreement and acknowledged that he read and understood its terms. The Government introduced a comprehensive factual basis summarizing the entire charged conspiracy (Rec. Doc. 141) and stating that Brumfield reasonably foresaw that the total quantity of cocaine base involved in the charged conspiracy was 167.2 grams. (Rec. Doc. 141, p. 2) In addition to outlining several hand-to-hand transactions between Brumfield and a confidential informant (Rec. Doc. 141, pp. 4-6), the factual basis asserted that co-defendant Dillon's role in the conspiracy was to allow Brumfield to use his trailer to cook crack cocaine. (Rec. Doc. 141, p. 10) Among other things, the factual basis asserted that during a search of Dillon's trailer conducted with Dillon's consent, Dillon voluntarily stated to law enforcement officers that Brumfield regularly used Dillon's trailer to cook cocaine and that Dillon received "half ounce quantities" of crack from Brumfield "a couple times per week" as compensation for using Dillon's trailer to cook crack cocaine. (Rec. Doc. 141, p. 10) During his rearraignment, Brumfield stated twice that he had thoroughly read and discussed the factual basis with his attorney prior to signing it and admitted that, with respect to himself, the

factual basis correctly set forth his conduct as it pertains to this case.[1]

On June 10, 2013, five days after Brumfield's rearraignment, the Government filed the instant motion alleging that on Friday, June 7, 2013, Brumfield refused multiple times to cooperate with the Government and to testify at co-defendant Dillon's trial, even after prosecutors pointed out to him that he had affirmed under oath that he understood the terms of the plea agreement, including the provision requiring him to testify for the Government. In their motion, the Government seeks to: (a) vacate Brumfield's plea agreement, (b) dismiss the superseding bill of information on the ground that Brumfield breached the plea agreement by refusing to cooperate, and (c) try Brumfield under the original indictment with Dillon on June 17, 2013. (Rec. Doc. 136) The Government requested expedited hearing on the motion due to the imminent June 17, 2013 trial date. The Court set the Government's motion for hearing in court on June 11, 2013 at 2:00 p.m. (Rec. Doc. 137)

---

[1] Both counsel for the Government and the Court asked Brumfield whether he had thoroughly read and discussed the details of the factual basis with his attorney before signing it. (Rearraignment Tr., p. 19, lines 10-12, 20-22) Brumfield responded "Yes, sir" to both questions. (Rearraignment Tr., p. 19, lines 13, 23) The Court also asked Brumfield whether he admitted that with respect to himself, what was set forth in the factual basis was what he did in the case. (Rearraignment Tr., p. 20, lines 3-5) Brumfield responded "Yes, sir." (Rearraignment Tr., p. 20, line 6)

At the June 11, 2013 hearing on the Government's motion, the parties stipulated that Brumfield's agreement to cooperate and testify in any trial court proceedings was a key part of the plea agreement. The parties also stipulated that on Friday, June 7, 2013, two days after Brumfield entered his plea to the superseding bill of information, two attorneys for the Government, Brumfield's counsel, and several Drug Enforcement Agency ("DEA") agents, met at the DEA to prepare Brumfield for his testimony in the June 17, 2013 trial of his co-defendant, Dillon. The parties also stipulated that during the June 7, 2013 meeting, counsel for the Government informed Brumfield that they were there to prepare him for his trial testimony, and Brumfield advised that he did not wish to cooperate or testify. Counsel for the Government advised Brumfield at the June 7, 2013 meeting that: (a) he believed his refusal to cooperate and testify to be a breach of his plea agreement, (b) would inform the Court of his refusal to cooperate, and (c) would seek to vacate the plea agreement and his plea to the superseding bill of information in order to try him as charged under the original indictment.

At the June 11, 2013 hearing, counsel for the Government advised the Court that he had spoken to Brumfield that morning, and Brumfield remained unwilling to testify. However, Brumfield's attorney advised the Court that Brumfield had informed him on the

morning of the June 11, 2013 hearing that he was *reluctantly* willing to cooperate with the Government. During the June 11, 2013 hearing, the Court questioned Brumfield as to whether he understood his plea agreement and the benefits that he obtained by being permitted to plead to a superseding bill of information. Brumfield assented. The Court also inquired whether Brumfield intended to cooperate with the Government and testify truthfully at Dillon's trial on Monday, June 17, 2013. Brumfield assented. The Court also inquired whether Brumfield understood that if he refused to cooperate and testify truthfully at the trial on Monday, June 17, 2013, the Government was requesting that the Court vacate his plea agreement, dismiss the superseding bill of information, and allow the Government to try him under the original indictment. Brumfield stated that he understood.

Thereafter, the Court took a brief recess to allow counsel for the Government to meet with Brumfield and his attorney to discuss his plea agreement and cooperation. Counsel for the Government asserted that during the brief recess, Brumfield gave statements that were inconsistent with each other and with the factual basis. In particular, counsel for the Government stated that during the recess, Brumfield stated at some points that he cooked and left crack cocaine for Dillon and at other times that he did not, which was inconsistent with the statement in the

8

factual basis that Brumfield gave half ounce quantities of crack to Dillon "a couple of times per week" as compensation for using Dillon's trailer to cook crack. (Rec. Doc. 141, p. 10) Counsel for the Government stated that, based on these interviews with Brumfield, they did not believe that Brumfield was being truthful and did not plan to call him as a witness at Dillon's trial on June 17, 2013. The Government also requested that the Court vacate his plea agreement, dismiss the superseding bill of information, and set Brumfield's trial on a later date. Brumfield's counsel objected to the vacation of the plea agreement. Following the hearing, the Court took the matter under advisement.

### GOVERNMENT'S ARGUMENT

The Government asserts that in the plea agreement, the parties agreed that Brumfield's conspiracy amount of cocaine base was 167.2 grams, a provision which reduced Brumfield's statutory sentencing range to five to forty years, instead of the ten year to life sentencing range he faced under the original indictment, which charged him with conspiracy to distribute 280 grams or more. The Government also points out that it agreed to accomodate Brumfield by declining to file a second notice of prior conviction, which would have resulted in a mandatory life sentence for Brumfield. In exchange, the Government urges that

Brumfield agreed to cooperate with the Government, including by testifying at the trial of his co-defendant, Dillon. The Government argues that by refusing to cooperate with the Government and testify at Dillon's trial, Brumfield breached the plea agreement and forfeited any performance by the Government. Accordingly, the Government seeks to vacate Brumfield's plea agreement, withdraw the superseding bill of information, and try Brumfield on the charges enumerated in the original indictment.

## LEGAL STANDARD

"'Plea bargain agreements are contractual in nature, and are to be construed accordingly.'" Hentz v. Hargett, 71 F.3d 1169, 1173 (5th Cir. 1994) (quoting United States v. Ballis, 28 F.3d 1399, 1409 (5th Cir. 1994)); United States v. Fulbright, 804 F.2d 847, 852 (5th Cir. 1986). "[I]f a defendant lives up to his/her end of the bargain, the Government is bound by its promises." U.S. v. Tilley, 964 F.2d 66, 70 (5th Cir. 1992) (citations omitted). "[I]f a defendant materially breaches his commitments under a plea agreement, the government is released from its obligations under that compact and may bring a new indictment on previously dismissed charges, regardless of what it may have promised earlier." Ballis, 28 F.3d at 1409; Tilley, 964 F.2d at 70 ("[I]f a defendant fails to fulfill his/her promises, the Government is released from its obligations under the

agreement and may indict and try the defendant regardless of whatever it may have promised earlier."); <u>United States v. Gonzalez-Sanchez</u>, 825 F.2d572, 578 (1st Cir. 1987) ("[T]he failure of the defendant to fulfill his promise to cooperate and testify fully and honestly releases the government from the plea agreement."); <u>Ricketts v. Adamson</u>, 483 U.S. 1 (1987). The factual determination of whether a defendant breached the plea agreement lies with the trial judge. <u>Tilley</u>, 964 F.2d at 70-71. The government bears the burden of proving that there has been a substantial breach of the plea agreement by a preponderance of the evidence. <u>Id.</u> at 71 (citations omitted).

## DISCUSSION

### A. Brumfield Materially Breached the Plea Agreement

The Court finds that Brumfield materially breached the plea agreement. During the June 11, 2013 hearing, the parties stipulated that in the plea agreement, Brumfield received the benefits of (a) a reduction in drug quantity that lowered his statutory penalty and (b) the filing of a single § 851 sentencing enhacement, as opposed to a double § 851 sentencing enhancement, which saved him from a life sentence had the Government proved both its case and Brumfield's underlying prior convictions. Moreover, the plea agreement clearly states:

> This plea agreement is predicated upon the fact that
> the defendant agrees to submit to interviews whenever

11

and wherever requested by law enforcement authorities. The defendant understands he must be completely truthful. The defendant also agrees to appear before any Grand Jury or trial jury and to testify truthfully. The defendant understands if he is not truthful, this agreement will be null and void and defendant may be prosecuted for perjury or making false statements . . . defendant agrees to assist the Government with regard to the investigation and prosecution of criminal conduct.

(Plea Agmt., Rec. Doc. 140, p. 4)

These provisions make clear that Brumfield was obligated to (a) assist the Government with regard to the investigation and prosecution of criminal conduct, (b) submit to interviews whenever requested by law enforcement authorities, (c) provide truthful information during any such interviews, and (d) provide truthful testimony before any grand jury or trial jury. By refusing to cooperate and refusing to submit to the interview on June 7, 2013 in preparation for his testimony at Dillon's trial, Brumfield clearly breached his obligations under the agreement to assist the Government with regard to the investigation and prosecution of criminal conduct and to submit to interviews whenever requested by law enforcement authorities. Brumfield's conduct on June 7, 2013 in refusing to testify in Dillon's trial also constituted an anticipatory breach of his obligation to testify truthfully at Dillon's trial. Hentz v. Hargett, 71 F.3d 1169, 1174-75 (5th Cir. 1996).

The fact that there was some conflict between the Government's counsel and Brumfield as to whether or not Brumfield was willing to cooperate truthfully on the morning of the June 11, 2013 hearing is irrelevant, given that the Government was entitled to rely on Brumfield's statement on June 7, 2013 that he would not testify in Dillon's trial. Hentz, 71 F.3d at 1175. Moreover, Brumfield's conduct at the June 11, 2013 was inconsistent. Although Brumfield represented to the Court that he was willing to cooperate during the June 11, 2013 hearing, it is undisputed that minutes later, in an interview during a recess in the hearing, Brumfield gave statements to prosecutors that were directly contradictory to each other and the factual basis that Brumfield signed and admitted was an accurate summary of what he did in the case. During that interview, Brumfield stated at some points that he had never given Dillon crack to compensate Dillon for allowing him to use his trailer to cook crack, a statement that directly contradicted the factual basis he signed. (Rec. Doc. 141, p. 10, ¶ 3) At other points, he stated that he had given Dillon crack. Given their contradictory nature, one of these statements had to be false. See Hentz, 71 F.3d at 1175 (reasoning that defendant breached plea agreement obligation to give truthful testimony when statements during initial debriefing contradicted later proposed testimony regardless of whether

defendant gave false information during the initial debriefing or the later meeting). Thus, Brumfield's conduct during the recess in the June 11, 2013 reflected "at best, some confusion about his willingness to tell what he earlier said under oath was the truth," and the Government should not be faulted for its decision not to call him as a witness at Dillon's trial under these circumstances. <u>United States v. Castro</u>, 118 F. Supp. 2d 711, 713 (E.D. La. 2000).

**B. Effects of Brumfield's Material Breach of Plea Agreement**

Having found that Brumfield materially breached his plea agreement with the Government, the next question the Court must address is the remedy for those breaches. The plea agreement does not specifically identify the effects of and remedies for the breaches identified, providing only that "[t]he defendant understands that if he is not truthful, this agreement will be null and void and defendant may be prosecuted for perjury or making false statements." Under this express dissolution clause, the plea agreement would be deemed dissolved at the time that Brumfield breached his obligation to be truthful. La. Civ. Code arts. 2017 ("The parties may expressly agree that the contract shall be dissolved for the failure to perform a particular obligation. In that case, the contract is deemed dissolved at the time it provides for or, in the absence of such a provision, at

14

the time the obligee gives notice to the obligor that he avails himself of the dissolution clause.") However, it is unnecessary to address the question of whether Brumfield's decision to refuse to cooperate at all on June 7, 2013 might be characterized as a breach of his obligation to be "truthful,"[2] which triggered the express dissolution clause, because Brumfield's conduct on June 7, 2013 undoubtedly gave rise to material breaches and anticipatory breaches of other obligations in the plea agreement. Although the plea agreement does not specifically identify the effects of and remedies for these other identified breaches and anticipatory breaches, as it does with respect to breaches of the obligation to be truthful, the Fifth Circuit has acknowledged that "the remedies for breach are commonly supplied simply by reference to the applicable law of contracts" where the plea agreement lacks "comprehensive provisions specifying remedies in the case of breach." United States v. Ballis, 28 F.3d 1399 (5th Cir. 1994).

In this case, under the applicable contract principles, the appropriate remedy is dissolution of the plea agreement. When Brumfield committed an anticipatory breach of the plea agreement on June 7, 2013 by refusing to testify at Dillon's trial, it

---

[2] It might be reasoned that Brumfield's refusal to engage prosecutors at all is a breach of an affirmative obligation to be truthful, since he could not be "truthful" if he was not speaking to the Government at all.

relieved the Government of any obligation to call Brumfield as a witness at Dillon's trial and entitled the Government to regard the contract as dissolved. Id. at 1174 (citing *Restatement (2d) of Contracts*, § 253(2)) ("'[w]here performances are to be exchanged under an exchange of promises, one party's repudiation of a duty to render performance discharges the other party's remaining duties to render performance.'"); Marek v. McHardy, 101 So. 2d 689, 694-95 (La. 1958) (recognizing that an anticipatory breach of contract is actionable and that a party to a commutative contract[3] in Louisiana may discontinue his performance when the other party notifies him that the contract will be repudiated). Under contract principles, "[w]hen a delayed performance would no longer be of value to the obligee or *when it is evident that the obligor will not perform*, the obligee may regard the contract as dissolve without any notice to the obligor." La. Civ. Code art. 2016 (emphasis added). Here, it was evident that Brumfield would not perform at the interview on June 7, 2013, which prompted the Government to file the instant motion seeking to vacate Brumfield's plea agreement, dismiss the superseding bill of information, and try Brumfield under the original indictment. The Government was entitled to regard the

---

[3] "A contract is commutative when the performance of the obligation of each party is correlative to the performance of the other." La. Civ. Code art. 1911.

16

contract as dissolved at that point without giving any notice to Brumfield. The effect of dissolution is that "the parties shall be restored to the situation that existed before the contract was made." La. Civ. Code art. 2018. The Government requests that the Court vacate Brumfield's plea agreement, dismiss the superseding bill of information, and allow the Government to try Brumfield on the five counts enumerated in the original indictment. The Court agrees that this course of action would restore the parties to the state that existed before the plea agreement was made.

The Court notes that based on Hentz, the Government's request raises a question as to whether the proper course of conduct is to allow Brumfield's plea of guilty to the single conspiracy count in the superseding bill of information to remain intact and allow the Government to bring new charges against Brumfield or, alternatively, to vacate the plea and dismiss the superseding bill of information, such that the charges against Brumfield in the original indictment are reinstated. In Hentz, the defendant entered a plea agreement with a state prosecutor several days into his trial on a charge of capital murder. Id. at 1171. Pursuant to the terms of the plea agreement, he was allowed to plead guilty to the reduced charges of murder (non-habitual) and grand larceny (non-habitual), with consecutive sentences of life imprisonment and five years, and the prosecutor agreed to

dismiss other pending charges. Id. In exchange, the defendant agreed to be debriefed immediately regarding the events in question, to submit to a polygraph examination to determine the accuracy of such information, and to give truthful testimony at any trial of his co-defendants. Id. The Court accepted the defendant's guilty plea and sentenced him to life imprisonment. Id. at 1173. After the defendant had pleaded guilty, the state prosecuted one of the co-defendants for murder. Id. at 1172. Prior to his co-defendant's trial, the defendant informed the prosecutor that his testimony would not consist of the information that he had provided during the debriefing. Id. Consequently, the prosecutor reinstated certain charges and brought additional charges against the defendant. Id.

Thereafter, the defendant in Hentz filed a motion in state court to set aside his plea of guilty to the charges of murder and grand larceny on the grounds that the State had breached the plea agreement. Id. Both the state trial court and state supreme court found that his motion to withdraw his plea should be denied, because the defendant had breached the plea agreement by refusing to testify at his co-defendant's trial. Id. Thereafter, the defendant filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in federal district court challenging his convictions for murder and grand larceny and

18

alleging that the State violated the terms of the plea agreement
when it brought charges against him subsequent to his murder
conviction. Id. The district court rejected the defendant's
arguments and denied him relief. Id. at 1173. Thereafter, the
defendant appealed, and after affirming the district court's
finding that the defendant breached the plea agreement, the Fifth
Circuit considered whether the district court had erred by not
allowing the breaching defendant to withdraw his guilty plea to
murder and grand larceny, for which he had been sentenced to life
imprisonment. Id. 1173-75. The defendant in Hentz argued that
"'his promise to plead guilty to murder and grand larceny was
canceled at the same exact moment when [the Government's] promise
to dismiss other charges pending against [him] . . . was
canceled,'" based on a provision in his plea agreement stating
that if the defendant breached the plea agreement, the state
would consider the agreement null and void. Id. at 1175. The
Fifth Circuit observed that defendant's contention ignored the
fact that he had not only promised to plead guilty at the time he
breached, but had already pleaded guilty. Id. at 1175-76. The
Fifth Circuit also observed, relying on United States v. Ballis,
28 F.3d 1399, 1409 (1994), that if a defendant materially
breaches his plea agreement, the prosecution is relieved from its

obligations under that agreement and may bring a new indictment on previously dismissed charges.

In contrast with _Hentz_, it is the Government, the non-breaching party, who seeks to vacate Brumfield's plea to the superseding bill of information that contains only a single conspiracy count, and instead dismiss the superseding bill of information and try him under the original indictment. In both _Hentz_ and _Ballis_, the Fifth Circuit recognized that a defendant's material breach of the plea agreement relieves the prosecution from its obligations under that agreement and allows them to bring a _new_ indictment on _previously dismissed_ charges. 28 F.3d at 1409 (citations omitted); 71 F.3d at 1176 (citations omitted). In _Hentz_, that court recognized that after a defendant enters a plea of guilty to reduced charges pursuant to a plea agreement, his subsequent breach of that plea agreement would not entitle him to withdraw his guilty plea on the grounds that promise to plead guilty was extinguished at the same time that he breached the agreement. 71 F.3d at 1175. However, the Court also acknowledged that the defendant's material breach of the plea agreement releases the Government from its obligations. _Id._ at 1176. Here, the Government's main obligation in the plea agreement was to allow Brumfield to enter a plea of guilty to a single conspiracy count with a reduced drug quantity and to enter

a single § 851 sentencing enhancement in exchange for Brumfield's cooperation. Thus, Brumfield's subsequent material breach relieved the Government of its obligation to allow Brumfield to plead guilty to the reduced charges in the superseding bill of information. Although Ballis and Hentz acknowledge that if a defendant breaches his plea agreement after he has entered a guilty plea and been sentenced, the Government *may* bring additional charges that it had previously dismissed, the cases do not prevent the Government from instead moving to (a) vacate the defendant's plea to the reduced charges in the superseding bill of information, (b) dismiss the superseding bill of information, and (c) proceed to try Brumfield on the charges in the original indictment. Unlike in Ballis and Hentz, where the previous charges had already been dismissed and the defendants had already been sentenced at the time they breached their plea agreements, in this case it would be impractical for the Government to bring a "new indictment on previously dismissed charges" given that the charges in the original indictment have not yet been dismissed and Brumfield has not yet been sentenced. Here, the Court finds that the relief that the Government has requested will best achieve the goal of relieving the Government from its obligations under the plea agreement and restoring the parties to the

situation that existed before the parties entered the plea agreement.

Accordingly,

**IT IS ORDERED** that the Government's Motion to Vacate Plea Agreement and Withdraw Superseding Bill of Information **(Rec. Doc. 136)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Brumfield's guilty plea to the superseding bill of information is **VACATED**.

**IT IS FURTHER ORDERED** that the Superseding Bill of Information as to Brumfield **(Rec. Doc. 129)** is **DISMISSED**.

New Orleans, Louisiana, this 5th day of August, 2013.

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE